UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTEX RECREATION CORPORATION,

Plaintiff,

v.

METALAST, S.A., Sociedad Unipersonal,

Defendant.

Civil Action No. 01-1213  (JDB)

MEMORANDUM OPINION

In this patent infringement case, defendant Metalast, S.A. ("Metalast") asserts that plaintiff Intex Recreation Corp. ("Intex") has willfully infringed its patent on a swimming pool ladder, U.S. Patent No. 5,547,041 ("the '041 patent").  Metalast seeks enhanced damages pursuant to 35 U.S.C. § 284 based on the alleged willful infringement.  The case has been through a claim construction proceeding and discovery, and is now in the summary judgment phase.  However, in response to Metalast's claim for enhanced damages, Intex has raised a defense of alleged good-faith reliance on the advice of counsel.

The parties agree that by asserting the advice of counsel defense, Intex has waived the attorney-client privilege for the two written opinion letters prepared by its trial counsel relating to issues of infringement and validity of the '041 patent.  As is often the case in such circumstances, however, there is a substantial disagreement with respect to the scope of the waiver, with the parties taking positions at opposite polar extremes.  Metalast argues for a broad waiver that would include all communications between Intex and its counsel regarding the subject matter of the opinion letters (i.e., the issues of infringement and validity of the '041 patent), while Intex urges a

narrow waiver limited to the specific opinion letters themselves and documents referring to those opinion letters which it has previously produced.  In particular, Intex takes issue with Metalast's assertion that the waiver encompasses documents relating to settlement discussions and trial strategy (the majority of documents at issue) which Intex considers unrelated to the subject matter of the opinion letters.

Metalast has filed a motion to compel production of all documents and communications within the broad scope of the waiver it advocates.  Intex has filed a motion for a protective order that would limit the scope of depositions relating to the subject matter of the opinion letters, and also curtail the breadth of a proposed Fed. R. Civ. P. 30(b)(6) deposition noticed by Metalast.  The Court agrees that the scope of the waiver of attorney-client privilege under these circumstances is broad, although not quite so broad as Metalast contends.  The Court will therefore grant in part and deny in part both motions.

## BACKGROUND

Intex seeks a declaration that the '041 patent is invalid and not infringed while Metalast claims that Intex has willfully infringed the '041 patent.  Metalast served a broad set of requests for production of documents, to several of which Intex objected on grounds that the documents are subject to the attorney-client privilege and are attorney work product.  Metalast insisted that Intex must identify any responsive documents as to which a privilege is claimed on a privilege log in accordance with Fed. R. Civ. P. 26(b)(5).  Intex responded that it would provide a privilege log as needed, and that it would waive the attorney-client privilege for the limited purpose of producing opinions of counsel regarding the '041 patent.  Intex then produced to Metalast a complete copy of a July 28, 2000 opinion letter prepared by its lead trial counsel and sent to Intex,

as well as a redacted copy of a October 3, 2000 opinion e-mail from its counsel to Intex (together the "opinion letters").  The opinion letters contain attorney-client communications regarding the issues of infringement and validity of the '041 patent.

The parties then exchanged correspondence with respect to the scope of any waiver of attorney-client privilege.  Metalast insisted that the waiver included all communications between Intex and its counsel regarding the issues of infringement and validity of the '041 patent, as well as all documents in Intex's possession that refer or relate to counsel's opinion or represent information provided to counsel as a basis for the opinions.  Intex disagreed, insisting that waiver should be limited to the specific opinion letters.  Intex did, however, eventually provide Metalast with a privilege log.

Following fact and expert discovery relating to claim construction and the Court's decision on claim construction, the parties also conducted discovery related to damages.  Intex filed a motion for leave to file a Second Amended Complaint to add a count asserting that the '041 patent was invalid pursuant to 35 U.S.C. § 102(b) and to file an amended answer to Metalast's counterclaim to add that defense as well.  Metalast opposed the motion.  In a September 23, 2003 Order, the Court granted Intex's motion stating that "only narrowly limited additional discovery will be required on that [new] claim."  Both parties thereafter asserted that the remaining discovery was narrowly focused on damages and the new invalidity claim.  Deposition notices served by Metalast for Intex pursuant to Rule 30(b)(6) and for Intex's trial counsel have generated a dispute between the parties as to the proper scope of remaining discovery as well as the appropriate scope of the waiver of attorney-client and work product privileges.

<u>ANALYSIS</u>

The parties' competing motions focus on four issues.  First, what is the proper scope of the waiver of attorney-client privilege in patent cases where willful infringement is an issue and advice of counsel has been raised as a defense?  Second, how should the general principle with respect to the scope of waiver be applied here as to such items as post-suit trial counsel materials, settlement communications, and documents and communications prepared after the disputed design was changed?  Third, must Intex produce the entire October 3, 2000 opinion e-mail without redactions?  And fourth, should Metalast be constrained in its proposed depositions with respect to either the scope of the waiver of attorney-client privilege or inquiries going beyond damages and invalidity?

**I.      Scope of Waiver**

Consistent with most cases to address the issue, this Court concludes that the scope of the waiver of attorney-client privilege when advice of counsel is raised as a defense in a patent infringement action is very broad.  Hence, Intex must produce all documents and communications that concern the subject matter of the opinion letters (<u>i.e.</u>, infringement and validity of the '041 patent under 35 U.S.C. § 112) to the extent the documents were generated by or communicated to Intex, including any information in Intex's files, any information provided to counsel as a basis for the opinions, and any attorney work product that counsel provided to Intex.

There is no question that the attorney-client privilege is waived when a client asserts reliance on the advice of counsel as an affirmative defense, because the client has then made a conscious decision to inject as an issue in the litigation the advice of counsel.  <u>See</u> <u>Glenmede Trust Co. v. Thompson</u>, 56 F.3d 476, 486 (3d Cir. 1995); <u>Simmons, Inc. v. Bombardier, Inc.</u>, 221

F.R.D. 4, 8 n.4 (D.D.C. 2004); Aspex Eyewear, Inc. v. E'Lite Optik, Inc., 276 F. Supp. 2d 1084, 1088 (D. Nev. 2003); Steelcase, Inc. v. Haworth, Inc., 954 F. Supp. 1195, 1197-98 (W.D. Mich. 1997).  The parties agree with that proposition, but disagree concerning the scope of the resulting waiver.

As a threshold matter, the Court addresses the applicable law.  Resolution of discovery disputes and other procedural issues unique to patent litigation is guided by decisions of the Federal Circuit.  See Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1574-75 (Fed. Cir. 1984), overruled on other grounds by Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 432 (1985).  However, there is a split of authority among the district courts on whether the scope of the waiver resulting from the advice of counsel defense is a matter unique to patent law or a matter to be determined by precedent from the regional circuit courts.  Simmons, 221 F.R.D. at 9 n. 5 (citing discussion in Chimie v. PPG Indus., Inc., 218 F.R.D. 416, 419 (D. Del. 2003).  As the Simmons court noted, "the better reasoned approach recognizes that reliance on an advice-of-counsel defense in patent litigation is a unique brand of the defense rendering general advice-of-counsel discovery holdings inapposite" because the defense "is used only to provide insight into the alleged infringer's state of mind" and determine whether the requisite level of willfulness under 35 U.S.C. § 284 is present.  Id.; accord Steelcase, 954 F. Supp. at 1198; but see Chimie, 218 F.R.D. at 419 n.4.  The scope of waiver issue, however, has not been resolved by the Federal Circuit.   In this situation, the Court believes that it is appropriate to resolve the scope of waiver issue by reference to Federal Circuit decisions on the nature of the advice of counsel defense and other district court decisions addressing the scope of waiver issue in patent infringement cases,

rather than by reference to regional circuit decisions on attorney-client privilege and work product immunity generally.  See Simmons, 221 F.R.D. at 9 n. 5.

The question of willful patent infringement is one of fact turning on whether the alleged infringer had a reasonable belief that the challenged activity did not violate the law.  See Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1192-93 (Fed. Cir. 1996).  "The Federal Circuit has made it clear that the infringer's intent, not that of counsel, is the relevant issue." Steelcase, 954 F. Supp. at 1198 (citing Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992)); see Solomon v. Kimberly-Clark Corp., 1999 WL 89570, *3 (N.D. Ill.), rev'd on other grounds, 216 F.3d 1372 (Fed. Cir. 2000).  When an alleged infringer claims reliance upon advice of counsel, a court must examine "objective evidence" to assess whether the reliance was justified.  See Read Corp. v. Portec, Inc., 970 F.2d 816, 829 (Fed. Cir. 1992).  Hence, the infringer's "intent and reasonable beliefs are the primary focus of a willful infringement inquiry." Ortho Pharmeceutical, 959 F.2d at 944; Steelcase, 954 F. Supp. at 1198. The inquiry with respect to reliance on an opinion of counsel, of course, "is not the legal correctness of the opinion, but whether the opinion was competent."  Aspex Eyewear, 276 F. Supp. 2d at 1090.  That assessment requires examination of objective evidence concerning the adequacy of any legal opinion.  See Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983); Aspex Eyewear, 276 F. Supp. 2d at 1091.

There is a split of authority among the district courts on the issue of the scope of waiver of attorney-client privilege and work product immunity where the advice of counsel has been raised as a defense to willfulness in a patent dispute.  This Court concludes that a broad waiver is

appropriate, although (as explained below) the waiver should not extend to include attorney work

product materials created for trial even if never disclosed to the client.

Considerations of fairness require that a litigant should not be able to claim reliance on

advice of counsel as a defense, and hence a sword in litigation, while at the same time asserting

attorney-client privilege or work product doctrine as a shield to protect against the opposing party

testing the legitimacy of that claim.  See Aspex Eyewear, 276 F. Supp. 2d at 1092-93.  Fairness

requires that the litigant asserting the defense waives the attorney-client privilege and work

product immunity "to the broadest extent consonant with the direct relevance to the advice of

counsel itself."  BASF Aktiengesellschaft v. Reilly Indus., Inc., 283 F. Supp. 2d 1000, 1005 (S.D.

Ind. 2003) (quoting Chiron Corp. v. Genentech, Inc., 179 F. Supp. 2d 1182, 1189-90 (E.D. Cal.

2001)).  Hence, not just the opinion letters themselves and communications with the client about

them must be produced, but also those materials that counsel actually relied upon in rendering an

opinion, to the extent those documents were provided to the client.  Id.  The waiver also includes

all documents that refer or relate to the subject matter addressed in counsel's opinion letter, to the

extent those documents were provided to the client.  See Steelcase, 954 F. Supp. at 1198-99.  The

subject matter waived is not limited to the specific opinion letter proffered, but rather extends to

the specific issues of advice asserted as a defense to willfulness, including infringement and

validity.  See Akeva, L.L.C. v. Mizuno Corp., 243 F. Supp. 2d 418, 422 (M.D.N.C. 2003).  Thus,

here, the subject matter waived by Intex is properly defined as infringement and validity of the

'041 patent under 35 U.S.C. § 112.  This Court concludes that such a broad scope of the waiver is

necessary to ensure fairness in the litigation by permitting litigants to test through discovery the

positions taken in the litigation.  See Aspex Eyewear, 276 F. Supp. 2d at 1093 (relying on broad

reach of discovery rather than admissibility standard).

## II.    Application of a Broad Waiver

Simply stating that the scope of the waiver must be broad does not fully resolve the

discovery issues presented here.  In applying a broad waiver with respect to the subject matter of

the opinion letters, the Court must decide whether the waiver extends to post-suit trial counsel

materials (attorney work product), whether it includes materials prepared after the design of the

ladder at issue was changed, and whether settlement materials of Intex and its counsel must be

produced.

Many courts have applied a broad subject matter waiver to require disclosure of all pre-

and post-complaint materials, even uncommunicated attorney work product.  See, e.g., Chiron,

179 F. Supp. 2d at 1188.  That would encompass opinions (and related materials) provided to the

client by litigation counsel as well as opinion counsel, both before and after the advice letter, and

uncommunicated work product of opinion counsel.  See id.; see also Akeva, 243 F. Supp. 2d at

423-24 (disclosure of uncommunicated work product required only when opinion counsel is also

trial counsel).[1]

_____

[1]  Metalast makes this argument regarding waiver of uncommunicated attorney work
product for the first time in its reply brief.  Metalast's Reply to Intex' Opp. to Metalast's Mot. to
Compel at 3-5 ("Metalast's Reply Br.").  However, Metalast's motion refers only to production of
"communications between counsel and client concerning the subject matter of the opinions" and
other information in Intex's possession, and does not make the broader waiver argument regarding
uncommunicated attorney work product.  See Metalast's Motion to Compel at 1-2 and Proposed
Order.  Additionally, another section of Metalast's reply brief states that it seeks attorney work
product only to the extent that Metalast can demonstrate that documents were communicated to
Intex and contained conclusions or advice that cast doubt on the earlier opinion letters.  Metalast's
Reply Br. at 7-8.  Therefore, the issue of whether the waiver encompasses uncommunicated
attorney work product is of questionable relevance to Metalast's motion to compel.  However, the

However, courts have recognized the need to afford some protection to work product generated by litigation counsel in order to shield the effectiveness of trial preparation from undue discovery by an adversary.  See Aspex Eyewear, 276 F. Supp. 2d at 1095.  The issue of any temporal limitation on an otherwise broad waiver of attorney-client privilege has divided the federal courts, with many courts insisting on the broadest waiver and hence disclosure of all communications and documents regarding the subject matter of the opinion through trial (and whether or not communicated to the client), see, e.g., Akeva, 243 F. Supp. 2d at 423; Chiron, 179 F. Supp. 2d at 1188-90, while other courts construe the subject matter narrowly and limit waiver to communications and documents created prior to litigation, in order to maximize protection of litigation work product, see, e.g., Dunhall Pharm., Inc. v. Discus Dental, Inc., 994 F. Supp. 1202, 1206 (C.D. Cal. 1998).  See generally BASF, 283 F. Supp. 2d at 1005-06 (collecting and discussing cases).

This Court agrees with the BASF court that a "middle ground" is the most appropriate approach to this issue, under which waiver extends only to those trial counsel work product materials that have been communicated to the client and "contained conclusions or advice that contradict or cast doubt on the earlier opinions." BASF, 283 F. Supp. 2d at 1006.  This approach accommodates both the concern for fairness that drives the broad waiver doctrine and the well-recognized high level of protection generally accorded trial counsel opinion work product. Id. Hence, any otherwise privileged documents or other information generated by Intex or its counsel subsequent to the two opinion letters issued in 2000 (including post-suit materials), and relating

Court's delineation of the scope of the waiver necessarily touches on the issue, and should guide the course of the remaining deposition discovery as well.

to the subject matter of those opinion letters, must be produced if the documents were communicated to Intex and if they question or contradict in any way the competence or validity of the opinions rendered.  See id. at 1007.  Only in this way can fairness be ensured by requiring Intex to disclose not only the opinions relied upon through invocation of the advice of counsel defense but also any damaging or contradictory information regarding those opinions.[2]

Application of this principle here should be straightforward even though opinion counsel is also trial counsel.  Post-suit trial counsel materials for which attorney work product or attorney-client protection is asserted must be disclosed if they question or contradict in any way the competence or validity of the 2000 opinion letters to the extent such materials were communicated to Intex.  That disclosure obligation includes materials prepared after the design of the ladder at issue was changed and any settlement materials, because the operative guiding principle is whether otherwise privileged post-suit trial counsel work product contradicts or casts doubt on the earlier opinion letters, in which case it must be produced even if "settlement material" or created post-design change.[3]

_____

[2] If Intex represents that there are no documents on the privilege log in this category, but Metalast believes in good faith that there are, then the Court may review any disputed items in camera.

[3] However, it is worth repeating that the subject matter of the opinion letters that are the basis for the advice of counsel defense -- infringement and validity under 35 U.S.C. § 112 -- also defines the scope of the waiver.  Hence, there is no obligation to disclose privileged material relating to possible invalidity of the '041 patent under 35 U.S.C. § 102(b), a different subject matter.

-10-

### III.     Redaction of October 3, 2000 Opinion E-mail

Intex has produced a redacted copy of the October 3, 2000 e-mail that is one of the opinion letters at issue.  The redacted material does not relate to the '041 patent according to Intex.  Metalast asserts that the entire opinion, without any redaction, must be disclosed based on application of the "selective" or "partial" disclosure doctrine when advice of counsel is asserted as a defense to willful patent infringement.  See Steelcase, 954 F. Supp. at 1200 ("opinion cannot be redacted in any fashion"); id. at 1198-99 (production of irrelevant information is a consequence of waiver of the privilege).  Although the Court agrees with this general statement of the law, there is one refinement that may be relevant here.  Some courts have recognized that waiver is limited to the portion of an opinion letter constituting legal advice on the patent at issue, and hence portions relating to other patents need not be produced.  See Solomon, 1999 WL 89570 at *5. The guiding principle, again, is fairness, and the fortuity of combining opinions or subjects in one letter should not result in a waiver of privilege as to unrelated subject matters.  Id.  Hence, to the extent the redacted portion of the October 3, 2000 e-mail does not concern the '041 patent at all, it need not be produced.  But to the extent the redacted portion nonetheless relates in any way to the '041 patent, then it must be produced as a necessary consequence of the broad subject matter waiver of privilege applicable here.

### IV.     Scope of Depositions

The final two questions arise from Intex's motion for a protective order and relate to the proper scope of two noticed depositions: one of Intex's trial counsel, David N. Makous, who also is the author of the July 28, 2000 opinion letter, and a Rule 30(b)(6) notice to Intex.  With respect to the scope of permissible inquiry relating to Intex's invocation of an advice of counsel defense,

the parties should be guided by the preceding discussion concerning the appropriate scope of the waiver of attorney-client privilege and work product doctrine, and the resulting production of documents and communications under the Court's ruling.  This discovery must focus, however, on the competency, not the correctness, of the opinions provided, and on the intent and reasonable beliefs of Intex in relying on the opinions.  Metalast may not use this opportunity to reopen discovery broadly on claim construction, infringement, invalidity or other liability issues.  At the same time, the Court recognizes that there is inevitably some overlap between the information relevant to infringement and the reasonableness of Intex's reliance on counsel's opinion regarding non-infringement.  Thus, the Court will not limit the depositions solely to invalidity of the '041 permit under 35 U.S.C. § 112 and analysis of the term "uninterrupted inner surface." The areas of inquiry listed by Metalast, while somewhat broad, could potentially result in information relevant to the reasonableness of Intex's reliance on counsel's opinion, and thus are permissible areas of inquiry, subject to the restrictions outlined in the preceding discussion.  The areas of inquiry, thus restricted, may include: (a) information provided by Intex to its attorneys regarding infringement and validity; (b) communications between Intex and its attorneys concerning infringement and invalidity; (c) other opinions conveyed to Intex by its attorneys regarding infringement and validity; (d) documents in Intex's possession that refer or relate to counsel's opinion; and (e) communications with other attorneys regarding infringement and invalidity.

The remaining question, then, relates to the proper scope of additional discovery concerning damages and Intex's new invalidity claim.  This is an independent issue not turning on the advice of counsel defense and the resulting waiver of privilege.  The parties agree, moreover,

that "discovery has closed as to all issues except damages (and Intex' new claim of invalidity)."
Metalast Opp. to Intex's Motion for Protective Order at 1.

The disagreement over scope now focuses on nine topics of Metalast's Rule 30(b)(6)
deposition notice to Intex.  The Court does not believe there are actually that many topics in issue,
given the considerable overlap of subjects.  Most of the requested discovery, properly (and thus
narrowly) construed, is appropriate under the guiding principle that a key factor in deciding
whether an enhanced damages award for willful infringement is warranted is whether the
infringer deliberately or knowingly copied the patentee's design.  See Aero Products Int'l, Inc. v.
Intex Recreation Corp., 2004 WL 1696749, at *1 (N.D. Ill.) (citing Read Corp., 970 F.2d at 826-
27).

The remaining disputed topics from the Rule 30(b)(6) notice can be grouped for analysis
into four subjects.  Category 1 covers questioning on all ladders marketed by Intex since 1990.
Although designed to acquire admissible evidence on damages, that is too broad a subject of
inquiry.  Metalast may inquire only into the description (including construction) and quantity of
ladders sold by Intex from 1996 (the year the '041 patent was issued) through 2003.  Categories
10 and 13 deal with the conception of the design of the accused ladder and the decision to
redesign earlier ladders.  The Court is somewhat persuaded by Intex's argument that this
information is much more relevant to infringement (and hence liability) than to damages, and
therefore the discovery should be denied based on the Court's prior bifurcation of discovery and
the agreement that discovery is closed except for damages and the new invalidity claim.
However, the Court will permit discovery in these categories strictly limited to the issue of willful
infringement (and hence giving rise to possible enhanced damages).

Categories 11, 12, 15 and 16 seek information relating to the initial decision to have the accused ladders manufactured, the initial decision to purchase the accused ladders from Mingda Plastics, and the first contact by Intex with Mingda.  This is a narrow area of inquiry relevant to willful infringement and enhanced damages when limited to whether Intex had (or should have had) knowledge that the purchased ladders were copies of patented ladders.  Likewise, Categories 14 and 17, dealing with knowledge of the design of the accused ladders and of the construction of Metalast's ladders, involve a narrow inquiry that may lead to the discovery of admissible evidence relating to Intex's knowledge of infringement, and therefore willful infringement and possible enhanced damages.

The Rule 30(b)(6) deposition of a designated Intex employee should proceed consistent with these rulings.  It bears repeating, however, that this discovery is narrow, consistent with the agreed limitation of discovery to damages and the new invalidity claim, and should not be taken as an opportunity to reopen discovery on infringement or other issues as to which discovery is closed.

## **CONCLUSION**

For the foregoing reasons, Metalast's motion to compel production and Intex's motion for a protective order are each granted in part and denied in part.  A separate order has been issued.


_____/s/_____
JOHN D. BATES
United States District Judge


Dated:   March 2, 2005

Copies to:

William Charles Casano
Greenstein, Delorme & Luchs, P.C.
1620 L Street, Northwest
Suite 900
Washington, D. C.  20036
202-452-1400 (telephone)
202-452-1410 (fax)

David N. Makous
Thomas S. Kidde
Daniel C. Decarlo
Lewis Brisbois Bisgaard & Smith LLP
221 North Figueroa Street
Suite 1200
Los Angeles, California 90012-2601
        *Counsel for Plaintiff/Counter-defendant*

John E. Curtin
12629 Lake Normandy Lane
Fairfax, Virginia 22030
703-266-9543 (telephone)
703-790-2623 (fax)

Martin G. Raskin
Joshua L. Raskin
Steinberg & Raskin, PC
1140 Avenue of the Americas
New York, New York 10036
212-768-3800 (telephone)
212-382-2124 (fax)
        *Counsel for Defendant/Counter-claimant*